[Civil No. 197.   Filed January 17, 1888.]

[S. C. 16 Pac. 266.]

## JOHN HILL, et al., Plaintiffs and Respondents, v. E. LENORMAND, et al., Defendants and Appellants.

1. FINDINGS—RESPONSIVE TO ISSUE—EQUITY—MAY GRANT LESS RELIEF THAN PRAYED IN COMPLAINT.—Findings that the amount of water appropriated was less than that claimed in the complaint are responsive to the issue raised by a denial of the allegation of appropriation. A court of equity is not bound by the exact measure of the relief asked, and may grant less in accordance with the proof.

2. WATER AND WATER COURSES—RIPARIAN RIGHTS—APPROPRIATION—VESTED RIGHTS—OWNERSHIP OF LAND IMMATERIAL TO RIGHT OF APPROPRIATION.—Riparian rights are the same in Arizona as elsewhere, wherever they apply, but they are subject to intervening rights of prior appropriators, who acquire vested rights in waters. It is immaterial whether or not plaintiffs owned their land at the time their appropriation was initiated.

3. §§ 2339-2340 REV. ST. U. S. 1878 CITED AND CONSTRUED.

APPEAL from a Judgment of the County Court in and for the County of Cochise. Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

Herring & Herring, for Appellants.

Goodrich & Smith, for Respondents.

There is no statement of facts and hence the only question that can possibly arise upon the record as it made before this court is: Do the findings of fact support the decree of the court below? Every presumption is in favor of the findings and of the correctness of the judgment. *Kilborn* v. *Ritchie,* 2 Cal. 145, 56 Am. Dec. 326; *Shelby* v. *Houston,* 38 Cal. 421.

To reverse appellants must show affirmatively that the decree violates some rule of law. *Johnson* v. *Pendleton,* 1 Cal. 133.

WRIGHT, C. J.—This action was instituted in the county court of Cochise county, and its object was equitable relief. The complaint alleges that plaintiffs and their predecessors in interest, in the year 1877, appropriated the waters of the San Pedro river, to the extent of a canal or ditch six feet wide at the bottom, and of the depth of three feet; that plaintiff, the Contention Consolidated Mining Company, purchased from the predecessors of these plaintiffs an interest in said ditch, and the water thus appropriated. The court found as a fact that the appropriation was made at the time alleged; but that the amount of water appropriated was what would pass, without pressure, through a ditch five feet wide at the bottom, and of the depth of eighteen inches. The defendants, by their learned counsel, object to this finding, claiming that it is not responsive to the issue raised by their denial of the allegations; but we think it is. True, it finds, from the evidence, that the amount of water appropriated by plaintiffs was less than alleged; but, certainly, the finding was in direct line of the issue, and responsive to it. That the court found the amount of water appropriated by plaintiffs to be less than alleged in the complaint did not hurt defendants. It is well settled that courts of equity are not bound by the exact measure of relief asked. The logical inference to be drawn from the position of defendants' learned counsel is that, because plaintiffs allege that they had appropriated an amount of water that could pass through a ditch or canal

six feet wide at the bottom by three feet deep, which allegation was denied by defendants, therefor the court should have found for the defendants, if the proofs showed that plaintiffs were not entitled to all they claimed. If A. brings suit against B., in trover, for the conversion of a bushel of barley, and B. denies the conversion, and, at the trial, the proofs show the conversion by B, of only one-half bushel, would not a judgment for A. for the one-half bushel be responsive to the issue?

It is admitted that plaintiffs made their appropriation in 1877; and that subsequently, in 1884, defendants diverted a considerable quantity of the waters of San Pedro river into a ditch constructed by them; and the court found as a fact that such diversion affected the flow of water into plaintiffs' ditch. We cannot review the finding of that fact here.

Now the only statement of facts in the transcript is the evidence of the defendant Lenormand, to the effect that he is the owner of the lands which he irrigates and that these lands lie on both sides of the San Pedro river. And this brings us to a consideration of the real question in this case. Defendants, by their learned counsel, requested the following findings of law: "That defendants are riparian owners of the waters of the San Pedro river, where said river runs along through the lands and premises of defendants. (2) That defendants, as riparian owners of the waters of San Pedro river, where said river runs along or through their lands, are entitled to such free and full use of said waters as is reasonably necessary and sufficient for the purpose of cultivating their lands, and for such domestic purposes as are incident to the care of their stock, and the affairs of their daily household." These requests the court refused, and the defendants insist that it was error; but we think it was not. Does the fact of the ownership of these lands, on both sides of San Pedro river, by the defendants, give them the right to the usufruct of the waters as riparian owners, and that, too, notwithstanding the prior appropriation thereof by plaintiffs. Under the common law, it would; under the law as settled on the Pacific coast, it would not. This law is not only settled here by the adjudications of the courts, by the

long-established customs of the country, but it is ratified and confirmed by the legislation of congress. We deem no doctrine more clearly and thoroughly settled on this coast than this doctrine of water-rights. It is *par excellence* the *doctrine* of the Pacific coast. Among the earliest apprehensions of the people was the paramount importance of water. Among the miners the custom early grew of according to him the best right who was first in time. The privilege of irrigation soon became gauged by the same rule; so that now this doctrine is thoroughly interwoven into the jurisprudence of the coast, and may not be questioned. Riparian rights are the same here as elsewhere, wherever they apply; but they do not apply where the rights of prior appropriators have intervened. As is very generally the case in the Pacific states and territories, the conditions are so changed that riparian rights do not attach. In the case at bar, riparian rights do not apply. Here, the defendants, six or seven years subsequent to the appropriation of plaintiffs, bought the lands about two miles above plaintiffs, on both sides of the San Pedro river, and sought the usufruct of the waters thereof; diverting the same by means of a dam, ditch, etc., thereby interfering with the vested rights of plaintiffs as prior appropriators. Plaintiffs, as prior appropriators, had acquired vested rights in these waters, and the purchase and ownership of the lands on both sides of San Pedro river above plaintiffs did not divest these rights. Mr. Gould, in his admirable work on Waters, (section 228,) says: "In California, Nevada, and other Pacific states and territories, the common-law rule upon this subject has been modified, owing to the peculiar condition of the settlers and miners upon the public lands; and the right to running water exists without private ownership of the soil, upon the ground of prior location upon the land, or prior appropriation of the water." So that, as we take it, it was wholly immaterial whether plaintiffs owned their lands at the time of the appropriation or not. The federal government by act of congress, July 26, 1866, (see section 2339, Rev. St. U. S.,) confirmed all rights to the use of water acquired by prior appropriation; and by the act of congress

of July 9, 1870, it is provided that all patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested or accrued water-rights, etc., acquired under the ninth section of the said act of July 26, 1866. These federal statutes have been repeatedly construed by the courts of last resort on the Pacific coast, and we believe uniformly in harmony with the views expressed herein, unless it was in *Van Sickle* v. *Haines*, 7 Nev. 286, which was expressly overruled by the later case of *Jones v. Adams.* See *Jones* v. *Adams*, 19 Nev. 78, 3 Am. St. Rep. 788, 6 Pac. 442; *Kaylor* v. *Campbell*, 13 Or. 596, 11 Pac. 301; *Farley* v. *Irrigating Co.*, 58 Cal. 142; *Basey* v. *Gallagher*, 20 Wall. 683; *Jennison* v. *Kirk*, 98 U. S. 453; *Lux* v. *Haggin*, 4 Pac. (Cal.) 929, and cases there cited.

The court found that the quantity of water appropriated by plaintiffs (as hereinbefore indicated) was, for long times continuous, necessary for their reduction-works, and for irrigating their lands; and thereupon enjoined defendants from interfering with said quantity of water at times when the same was necessary for plaintiffs' use as aforesaid.

We think the judgment of the county court ought to be affirmed, and it is so ordered.