[Civil No. 2628. Filed January 7, 1928.]

[263 Pac. 10.]

I. M. GEORGE and E. M. CARROW, Copartners Doing Business as WALLAPAI MOUNTAIN CATTLE COMPANY, Appellants, v. AUBREY GIST, Appellee.

94

Mr. C. W. Herndon and Messrs. O'Sullivan & Morgan, for Appellants.

Mr. L. L. Wallace and Mr. Charles P. Elmer, for Appellee.

McALISTER, J.—I. M. George and E. M. Carrow, doing business as copartners under the name of Wallapai Mountain Cattle Company, filed a complaint praying for a temporary restraining order commanding Aubrey Gist to desist from using the waters impounded in a tank or reservoir situated about twelve miles from the town of Kingman, county seat of Mohave county, in sections 29 and 30, township 21 north, range 14 west of the Gila and Salt River meridian, and known as "north tank." Their prayer was denied, and they have brought the proceedings to this court for review.

It appears from the complaint that for more than thirty years last past the plaintiffs and their predecessors in interest have been the owners and in possession of the said north tank or reservoir and the waters contained therein; that it was located and the waters impounded therein appropriated long prior to any official survey of the land upon which it is situated, and that it has been in continuous use by the plaintiffs and their grantors for watering livestock ever since that time; that the defendant is the owner of a herd of goats and has entered into and upon said reservoir or tank without right and threatens plaintiffs and their employees with violence if they attempt to use its waters; that he is destroying the reservoir and its walls, and the same will soon become of no value and its waters go to waste unless he is restrained by the court; that by reason of such wrongful acts of defendant plaintiffs' cattle have deteriorated to the extent of sixty per cent of the value they had prior to their exclusion from the water of said reservoir by the defendant; that plaintiffs have been irreparably injured by such acts of the defendant who is unable to respond in damages therefor; that they have no plain, speedy or adequate remedy at law, and unless restrained by

the court the defendant will continue to harass them and to deprive them of the use of the water for their cattle; that the possession of the reservoir and the use of its waters by plaintiffs and their predecessors has been open and known to all persons for more than thirty years last past and was known to this defendant at the time he took possession thereof to the exclusion of the plaintiffs.

After admitting the residence of the parties and the allegation that the reservoir is situated in section 29, township 21 north, range 14 west of Gila and Salt River meridian, the answer denies every other allegation in the complaint.

It appears from the testimony that this tank or reservoir was constructed more than thirty years ago by building a dam across a wash through which some of the rain-waters falling in the Wallapai Mountains drain. It was built to impound flood waters, the wash being dry most of the year, and plaintiffs' predecessors in interest used it continuously for watering cattle for more than fifteen years prior to 1912, it being serviceable for this purpose for eight or ten months out of each twelve. In that year plaintiffs acquired by bill of sale the Kayser Brothers cattle in that vicinity, together with the improvements on the range, which, appellants testify, included the reservoir in question, and since then they have maintained and used it. The dam and about four-fifths of the reservoir are located on section 29 described above, and it is admitted that this is one of the odd sections granted by Congress in 1866 to the builders of the present Santa Fe Railway, and that very soon after the plaintiffs acquired the Kayser Brothers cattle they leased it from the railway company for grazing purposes and so held it until January 1st, 1923. Soon after this lease expired, the defendant secured one from the same company, and it is in force at this time.

The only question presented by the assignments is whether under the foregoing facts appellants are the owners of the reservoir in question and the waters impounded therein, or whether appellee by virtue of his lease on section 29 from the Santa Fe Pacific Railway Company is entitled to the use of it and its waters. Appellants admit that appellee holds a lease on section 29, and that the reservoir is located thereon, but deny that the lease includes the reservoir and gives appellee the right to use it and its impounded waters. They claim that the evidence discloses that their predecessors in interest constructed, maintained, and used the reservoir for beneficial purposes continuously for more than fifteen years prior to the time they purchased it in 1912, and that such user perfected title by prescription in their predecessors, and that they, appellants, acquired this title as a part of the improvements purchased with the cattle.

In their opening brief, however, they take the position that they and their grantors had used the reservoir and its waters continuously for more than thirty years, and that such usage perfected title in them by adverse possession, but after the filing of that brief the illness of counsel who prepared it brought other attorneys into the case, and, while the latter in their closing brief still rely upon title by adverse possession, they do not claim that the eleven years during which they held section 29 under lease from the railway company, 1912 to 1923, should be considered as a part of the time necessary to perfect title in this way. This is perhaps upon the theory that a tenant is estopped from denying his landlord's title during his tenancy (35 C. J. 1224), or even after its expiration unless possession is surrendered (35 C. J. 1229), and appellee contends that this principle applies as well to any right acquired by the grantors of appellants before tenancy of the latter began.

However, if title by adverse user had been perfected in appellants' grantors and the reservoir, together with the right to the use of the waters impounded therein, was sold and conveyed to appellants in 1912, the fact that soon after purchasing it they took a lease on section 29 upon which it was situated would not defeat their title. *Riggs* v. *Riley,* 113 Ind. 208, 15 N. E. 253; *Sage* v. *Rudnick,* 67 Minn. 362, 69 N. W. 1096; *Louisiana & Texas Lumber Co.* v. *Stewart et al.* (Tex. Civ. App.), 148 S. W. 1193; 2 C. J. 256, 257; *Martin* v. *Martin,* 76 Neb. 335, 124 Am. St. Rep. 815, 14 Ann. Cas. 511, 107 N. W. 580. In the last citation is found this language:

"The law is well settled that recognition of title in the former owner by one claiming adversely, after he has acquired a perfect title by adverse possession, will not divest him of title."

Prescriptive title is as good as that acquired by deed or otherwise and can be alienated only in the same way as such other title. "Title by adverse possession," quoting the language of a note to *Menzel* v. *Hinton* (132 N. C. 660, 44 S. E. 385), in 95 Am. St. Rep. 647, 674, "is as good as a paper title. The statute of limitations confers as complete a title as does a written conveyance." *School District* v. *Benson,* 31 Me. 381, 52 Am. Dec. 618; *Nelson* v. *Brodhack,* 44 Mo. 596, 100 Am. Dec. 328; *Bowen* v. *Preston,* 48 Ind. 367.

But whether appellants' grantors had perfected title by adverse user is immaterial so far as appellants are concerned because the record fails to disclose that their grantors transferred to them whatever title they may have had. The testimony of one of the appellants is that the reservoir was transferred by a bill of sale, though it does not appear that it was even mentioned by name in that instrument, but merely that it was included among the improvements on the range which passed with the

cattle. It will, of course, not be disputed that an earthen reservoir which impounds the flood waters of a mountain wash for the use of livestock on the range is real property, and that title to it passes by deed, and not by an instrument whose only function is to transfer personal property. In *School District* v. *Benson, supra,* the court in speaking particularly of title by adverse possession says:

"No doubt a disseisor may abandon the land, or surrender his possession by parol, to the disseisee, at any time before his disseisin has ripened into a title, and thus put an entire end to his claim. His declarations are admissible in evidence to show the character of his seisin, whether he holds adversely or in subordination to the legal title. But the title, obtained by a disseisin so long continued as to take away the right of entry, and bar an action for the land by limitation, cannot be conveyed by a parol abandonment or relinquishment, *it must be transferred by deed.*" (Italics ours.)

The following language is from the syllabus of *Sage* v. *Rudnick, supra:*

"When the statute of limitation has run in favor of a disseisor, no subsequent acknowledgment of the former owner's title, except by deed sufficient to pass title to land, will divest the title acquired by adverse possession."

This renders unnecessary any consideration of the sufficiency of the evidence to show whether the Santa Fe Pacific Railway Company's title to section 29 prior to 1912 was such as to render it subject to the limitation laws of this state or any other matter bearing on the question of the title of appellants' predecessors in interest.

The foregoing view likewise renders immaterial any consideration of the question of the appropriation of flood waters for stock or other beneficial purposes, though it is discussed to some extent in the opening and answering briefs and seems to have

aided the trial court materially in reaching the conclusion that appellants should be denied an order temporarily restraining appellee from using the reservoir and its impounded waters. However, it is not apparent just how there can be any question as to the right to appropriate flood waters, since paragraph 5337, Revised Statutes of 1913, Civil Code, which is paragraph 4169 of the Civil Code of 1901 brought forward, specifically provides for it. The case of *McKenzie* v. *Moore,* 20 Ariz. 1, 176 Pac. 568, upon which reliance seems to have been placed by the trial court, is without application to the issues raised in this proceeding. The waters it was attempted to appropriate in that instance were merely the waters of a seeping spring or well, and the court said that percolating water unconfined to a definite channel, and not constituting the source of a watercourse, belongs to the realty and is not subject to appropriation, under paragraph 5344, Revised Statutes of 1913, Civil Code, which makes applicable to purposes of irrigation and mining "all rivers, creeks, and streams of running water." The waters of the wash upon which north tank reservoir is built do not come within this classification.

The judgment denying the temporary restraining order is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.