541 P.2d 559

**Claude NEAL and Rita Neal, his wife, and Truxton Canyon Water Company, Inc., an Arizona Corporation, Appellants,**

v.

**Frank HUNT and Francis T. Hunt, his wife, Appellees.**

**Frank HUNT and Francis T. Hunt, his wife, Charles S. Grigg and Blanche Grigg, his wife, and John L. Byers and Susan Byers, his wife, Cross-Appellants,**

v.

**Claude NEAL and Rita Neal, his wife, and Truxton Canyon Water Company, Inc., an Arizona Corporation, Cross-Appellees.**

No. 11729.

Supreme Court of Arizona, In Banc.

Oct. 16, 1975.

Rehearing Denied Nov. 18, 1975.

Snell & Wilmer by Mark Wilmer, Phoenix, for appellants and cross-appellees.

Bonn & Anderson by Jeffrey D. Bonn, Jennings, Strouss & Salmon by M. Byron Lewis, Phoenix, for appellees and cross-appellants.

CAMERON, Chief Justice.

This is an appeal and cross-appeal from an injunction granted by the Superior Court of Mohave County which limited defendants, Claude and Rita Neal, and the Truxton Canyon Water Company, Inc., to taking no more than three hundred gallons of water per minute from certain water wells located on property owned by them in the Truxton wash area, thirty miles east of Kingman, Arizona.

We must answer the following questions on appeal:

1. Is the unrecorded agreement made in 1957 between defendants and plaintiffs' predecessor limiting the amount of water which could be used by plaintiffs' predecessor enforceable as to plaintiffs?

2. Is the water in dispute from an underground stream or derived from percolating waters?

3. Was the trial court within its discretion in limiting defendants to three hundred gallons of water per minute from defendant's wells?

The facts necessary for a determination of this case on appeal are as follows. The land in question is located in the Hualapai Valley of Mohave County in northwest Arizona, an area of very limited rainfall. The terrain is one of high plateaus, low mountains and valleys. The washes of the area contain surface water during some parts of the year and there are a few springs and streams. The inhabitants depend for water mainly on deep wells drilled on their land. The land involved is located in a non-critical ground water area as defined under our water code. A.R.S. § 45–308. In 1957 defendant, with the exception of 74 acres, sold his ranch to Hollenbeck. In a separate agreement not mentioned in the deed or recorded, defendant Neal reserved the water rights to the ranch which he had sold except for enough water for the buyer to irrigate 40 acres of crops. The reservation read as follows:

"And reserve further all water rights and waters incident and appurtenant to and within said land as reserved and to the lands sold to Buyers by Sellers in said escrow as hereinbefore set forth, EXCEPT that amount of water as would be necessary for the proper and efficient irrigation of forty (40) acres of cultivated crop land by the Buyers, which amount of water Sellers agree to allow Buyers to extract from said land so reserved by Sellers, in the event that Sellers are not able to extract said amount of water from the lands sold by Sellers to Buyers in said escrow, or any water right incident or appurtenant thereto."

The ranch changed hands several times and in 1971 its owner Collins sold the ranch consisting of some 2,800 acres of deedland, 540 acres of State Leaseland, and 3,100 acres of Taylor Grazing land to the plaintiff Hunt. On 29 April of that year, and prior to the sale, Collins told Hunt

that defendant had some claim to water rights on the ranch. Collins did not show Hunt any document relating to any claim. Hunt searched the county records and finding no document of record concluded that the matter was only a rumor. The next day he purchased the ranch. A few weeks after the sale Hunt and the defendant met at a livestock show and defendant mentioned his water rights. Hunt once again searched for this document in the Mohave County records to no avail. At the end of May, 1971, some 15 years after the sale of the land, the defendant finally recorded the water agreement.

Plaintiffs Mr. and Mrs. John L. Byers have 10 acres and plaintiffs Mr. and Mrs. Charles S. Grigg have 4 acres about 1 mile southwest of the Hunt ranch. Both of these families have wells located on their properties and use their well water for domestic and business purposes. Plaintiffs Mr. and Mrs. Frank Hunt use their Mohave property and well water for domestic and agricultural purposes. The Hunts, Griggs, and Byers' contend that if Neal is allowed to continue pumping the water level will soon drop forcing these families to sink deeper wells.

The defendants want to mine the water and transport it off the land. Besides the Truxton Water Company the defendants' family owns or has dealings with several other family enterprises and has contracts to provide water to various subdivisions and developments in Mohave County as well as to the town of Kingman.

The trial court, on 19 September 1973, entered findings of fact, conclusions of law, and decree permanently enjoining the defendants from removing percolating ground water to lands not overlying the common water supply in an amount greater than 300 gallons per minute. Conclusions of law 2, 3, 4, and 5 read as follows:

"2. The use which defendants propose to make of water from the common supply is a beneficial use but the use will be upon and for the benefit of lands which do not overlie the common supply.

"3. Withdrawal of groundwater from a common supply for a beneficial use upon lands which do not overlie the common supply is unlawful if the water supply to the well of another property owner whose lands overlie the common supply and who propose to make a beneficial use of the water upon his overlying lands is damaged or depleted.

"4. Withdrawal and use of ground water for a beneficial use upon lands which do not overlie a water supply from which the water is withdrawn is not unlawful if the water supply available to the owners of lands overlying the common supply for beneficial use is not thereby damaged or depleted.

"5. Lawful utilization of all available water resources of the state as required for a public or beneficial purpose and use is in the public interest."

From this the defendants appeal. The Hunts, joined by the Byers' and Griggs, cross-appeal contending that the trial court erred in allowing the defendants to withdraw 300 gallons per minute or any amount for use on land not overlying the common water supply.

## UNRECORDED WATER RIGHTS AGREEMENT

A.R.S. § 33–412(A) reads in part:

"All bargains, sales, and other conveyances whatever of lands, tenements and hereditaments * * * shall be void as to * * * subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder * * *."

The term "hereditament" is a broad one, more comprehensive than either the term "land" or "tenement" and almost as comprehensive as the term "property." 73 C.J.S. Property § 7d at p. 167. In *George v. Gist*, 33 Ariz. 93, 263 P. 10 (1928), we indicated that water rights in land must be conveyed in a deed and not a mere bill of sale. We reaffirm that posi-

tion. Percolating waters, which are not subject to appropriation, are included within hereditaments as found in A.R.S. § 33–412.

The trial court held that Hunt did not have actual knowledge of the 1957 agreement between defendant and Hollenbeck nor was there sufficient evidence to charge Hunt with constructive knowledge of the existence of the agreement prior to his purchase of the ranch. A long time ago this court said:

"* * * Where one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable with the knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based." *Luke v. Smith*, 13 Ariz. 155, 162, 108 P. 494, 496 (1910), aff'd, 227 U.S. 379, 33 S.Ct. 356, 57 L.Ed. 558 (1913).

Constructive and actual notice have the same effect. *Arizona Land and Stock Co. v. Markus*, 37 Ariz. 530, 296 P. 251 (1931).

We believe that when Collins told Hunt, prior to the sale, that defendant had a water right claim this was sufficient to put Hunt on inquiry. We believe further that absent other notice, a search of the record was sufficient under the facts in this case. Defendant, in order to protect his interest, had an obligation to record the instrument and Hunt had an obligation, once Collins told him of defendant's possible water rights, to ascertain if they were correct. The difference is that Neal did nothing, while Hunt attempted, by looking at the record, to ascertain if this rumor was correct. We will construe recording acts so as to afford the greatest possible protection to the person who in good faith endeavored to comply with them. *Phoenix Title and Trust Co. v. Old Dominion Co.*, 31 Ariz. 324, 253 P. 435 (1927). We believe Hunt acted reasonably

under the circumstances by searching the Mohave County recorder's office. Finding nothing to confirm the existence of the agreement, he cannot now be charged with having had constructive notice of its existence.

We believe that the trial court was correct in finding that Hunt was a subsequent purchaser for valuable consideration without notice and that the agreement between defendant and Hollenbeck was not binding upon Hunt. *Davis v. Kleindienst*, 64 Ariz. 251, 169 P.2d 78 (1946).

## SOURCE OF WATER

Prior to statehood this court held that there was a presumption that underground waters are percolating in nature and if one asserts to the contrary then this must be affirmatively shown by clear and convincing evidence. *Howard v. Perrin*, 8 Ariz. 347, 76 P. 460 (1904). A quarter of a century later we had occasion to define the requirements for showing the existence of an underground stream or subflow:

"* * * the essential characteristics of a water course are a channel, consisting of a well-defined bed and banks, and a current of water * * * without all these characteristics there can be no water course." *Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co.*, 39 Ariz. 65, 85, 4 P.2d 369, 376 (1931).

Additionally, it must be shown that there is a definite source of supply although there need not be continuously running water. The existence of a subterranean river is to be determined both by observation of the surface of the land as well as the utilization of scientific data. *Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co.*, supra.

In the case before us, Neal introduced evidence tending to show that the wells were fed by non-percolating waters. However, the trial judge concluded that he failed to overcome this presumption. With

this we agree. Our Court of Appeals has stated:

"Underground water is presumed to be percolating. The burden of proof is upon the person asserting otherwise, to show that the subterranean water flows in natural channels between well-defined banks. This must be done by clear and convincing evidence. If this is shown, then the subterranean waters are appropriable, the same as surface waters. *Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co.*, supra. Percolating waters are not subject to appropriation. *Bristor v. Cheatham*, 75 Ariz. 227, 255 P.2d 173 (1953)." *England v. Ally Ong Hing*, 8 Ariz.App. 374, 378–79, 446 P.2d 480, 484–85 (1968), vacated on other grounds, 105 Ariz. 65, 459 P.2d 498 (1969).

## LIMITING THE USE OF THE WATER

In his findings of fact the trial judge stated:

"28. None of the proposed locations for delivery of the water to be removed from the NEAL wells in Truxton Canyon overlay the supply of water common to the HUNT, BYERS, GRIGG and NEAL wells in Truxton Canyon; consequently, the present and contemplated withdrawal and use of the percolating groundwater by defendants is not connected with any beneficial ownership or enjoyment of the land from which it is withdrawn."

This court has stated in the strongest terms that the doctrine of riparian rights to water does not exist in Arizona. For example:

" * * * The Constitution of the State of Arizona, A.R.S. is the fundamental law of this jurisdiction. It provides, by Article 17, that 'The common law doctrine of riparian water rights shall not obtain or be of any force or effect in the State.' This does not mean that sometimes the riparian water rights doctrine has no force or effect in Arizona, nor

does it mean that the courts will enforce the provisions of the constitution as is deemed expedient. It means that the doctrine shall not obtain nor shall it be of any force or effect in the state. *Ever.*" *Brasher v. Gibson,* 101 Ariz. 326, 330, 419 P.2d 505, 509 (1966).

And our statute reads:

"A. The waters of all sources, flowing in streams, canyons, ravines or other natural channels, or in definite underground channels, whether perennial or intermittent, flood, waste or surplus water, and of lakes, ponds and springs on the surface, belong to the public and are subject to appropriation and beneficial use as provided in this chapter.

"B. Beneficial use shall be the basis, measure and limit to the use of water." A.R.S. § 45–101.

We have, however, been inconsistent in that while rejecting the doctrine of riparian rights as to surface and underground streams, we have adopted the doctrine of reasonable use as applied to percolating ground waters. This seeming inconsistency has been discussed as follows:

"Similarly, during the territorial period the Arizona court accepted the common law rule relating to percolating ground waters (footnote omitted), which is somewhat analogous to the riparian surface rights doctrine. Consequently, when the problem came before the court in *Bristor v. Cheatham* (footnote omitted), the court felt itself bound to follow the lead set by the territorial court and held that the reasonable use doctrine would apply to percolating ground waters. It was noted that the statute makes 'definite underground streams' subject to appropriation but makes no reference to percolating ground waters. (footnote omitted). The court decided that this indicated the intent of the legislature to exclude percolating ground waters from the appropriation doctrine. Thus, although Arizona has, by statutory provision, expressly abrogated riparian

rights as they apply to surface diversions and irrigation, it seems that there still are discernible and functioning common law property rights relating to water, even though shortly after *Hill v. Lenormand* [2 Ariz. 354, 16 P. 266] (footnote omitted) was decided in 1888, the court reconsidered the question of riparian rights and held that this doctrine is no part of Arizona law. (footnote omitted)" Lewis, Water Rights—Public and Private Water—Water in a· Slough Fed by The Colorado River is Public Water —*Bristor* [*Brasher*] *v. Gibson* [2 Ariz. App. 91, 406 P.2d 441] (Ariz.Ct.App. 1965), 8 Ariz.Law Review 192, 194.

Recently we held that the doctrine of beneficial use mentioned in our statute, A. R.S. § 45-101, is a part of the common law rule of reasonable use of percolating water. We stated:

"In our first decision here, we also held that the American rule of reasonable use permitted percolating water to be extracted for the beneficial use of the land from which it was drawn. We emphasized this aspect of the doctrine of reasonable use by requoting from *Bristor* that part of the decision in. *Rothrauff v. Sinking Spring Water Co.*, 339 Pa. 129, 14 A.2d 87, to the effect that the modern decisions are nearly harmonious in holding that a property owner may not convey waters off the lands from which they are pumped if the wells of another are thereby damaged or impaired. This limitation on the use of ground waters has the overwhelming support of American precedent. Percolating waters may not be used off the lands from which they are pumped if thereby others whose lands overlie the common supply are injured. (extensive citations omitted)

\* \* \* \* \* \*

"Such waters can only be used in connection with the land from which they are taken. (extensive citations omitted)." *Jarvis v. State Land Department,*

106 Ariz. 506, 508–09, 479 P.2d 169, 171–72 (1970) modifying 104 Ariz. 527, 456 P.2d 385 (1969).

However, in allowing the City of Tucson to take water from the Marana Critical Ground Water Area and transporting it outside the area, the court went on to state:

"It is also frequently stated as a maxim of equity that equity follows the law. By this is meant that equity obeys and conforms to the law's general rules and policies whether the common law or statute law. (citation omitted) By A.R.S. § 45-147 the relative value of uses in appropriable waters has been fixed by the Legislature as first, domestic and municipal uses, and second, irrigation and stock watering. The creation of such a priority clearly evidences a legislative policy that the needs of agriculture give way to the needs of municipalities. Hence, we hold that the decree in this case will be modified if Tucson purchases or acquires the title to lands within the Avra-Altar Valleys which are now cultivated and uses the water which would have been used in cultivating such lands as a source of supply for its municipal customers. Tucson may withdraw an amount equal to the annual historical maximum use upon the lands so acquired." *Jarvis v. State Land Department,* supra, 106 Ariz. at 510–511, 479 P.2d at 173–174.

We therefore hold that in dealing with percolating waters and not surface waters or subterranean streams, and absent a showing of damage to, or impairment of, the water supply of another landowner within the same groundwater basin, a landowner may mine and remove, to an outside area, subjacent water from his land. In our State water is a precious and much needed commodity. The law should encourage the reasonable and beneficial use of this great natural resource, subject, of course, to the rules for its taking and dis-

tribution which have evolved over the years. As we have stated:

" * * * It is the law of Arizona that percolating waters belong to the owner of the land on which they are found. (citations omitted) And he may convey them to other premises than those on which they are originally found, provided no other rights are injured thereby. (citation omitted)" *Fourzan v. Curtis*, 43 Ariz. 140, 147, 29 P.2d 722, 725 (1934).

In the instant case the trial judge found that the pumping of 300 gallons of water per minute from the Neal well would not injure Hunt's water supply or that of his neighbors. Should the contrary be found to be true, the Superior Court of Mohave County retains jurisdiction and can correct the harm.

We affirm the findings of fact, conclusions of law, and decree of the trial court.

Judgment affirmed.

HAYS and HOLOHAN, JJ., and EINO M. JACOBSON, Court of Appeals Judge, concur.

STRUCKMEYER, Vice Chief Justice (specially concurring).

I concur in the result.

Note: Justice LORNA E. LOCK-WOOD did not participate in the determination of this matter and Judge EINO M. JACOBSON sat in her stead.