**Robert CHESNEY, Plaintiff,**

v.

**The UNITED STATES of America, Secretary of the Interior, Bureau of Indian Affairs, the Fort Mohave Indian Tribe, Nora Garcia, Claude Lewis, Minerva Jenkins, Norma N. McCord, and Lorena Harvey, individually, and as members of the Fort Mohave Tribal Council, FM Farms, Inc., an Arizona corporation, Defendants.**

**Nos. CIV 83–1588 PCT–PGR, CIV 84–1561 PCT–CAM.**

United States District Court, D. Arizona.

Nov. 7, 1985.

John P. Frank and Janet Napolitano, Phoenix, Ariz., for plaintiff.

F. Patrick Barry, U.S. Dept. of Justice, Land & Natural Resources Div., Washington D.C., for U.S.

Dale T. White, Boulder, Colo., for Ft. Mohave Indian Tribe.

Rodney B. Lewis, Sacaton, Ariz., for defendants.

## MEMORANDUM ORDER

ROSENBLATT, District Judge.

### Overview

All defendants have filed motions for summary judgment based on the statute of limitations. There is no dispute about the applicable statute of limitations. 28 U.S.C. Sec. 2409a, the statute permitting quiet title actions to be brought against the government, contains a 12 year statute of limitations. Subsection (f) provides;

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

The motions at issue discuss the knowledge that Chesney had about the ownership of the land, and argue that as a matter of law, he had sufficient knowledge of the government's claim outside the 12 year period to bar his claims at this time.

### Discussion

The parties dispute the quality of notice that a plaintiff must have to "know" of the claim within the meaning of the limitations statute. Plaintiff argues that the claim must be sufficiently tangible to constitute a cloud on the title. *See Knapp v. U.S.*, 636 F.2d 279, 282 (10th Cir.1980). Plaintiff claims that the government must express its interest "in no uncertain terms".

A recent Ninth Circuit case rejects the plaintiff's interpretation. *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir.1985). Section 2409a does not require that the United States communicate its claim in clear and unambiguous terms. The proper test is when the plaintiff "knew or should have known", and that is a test of reasonableness. *Id.* Thus knowledge within the meaning of 2409a(f) can be actual knowledge like a posted sign or an occupation, e.g. *Park County, Montana v. U.S.*, 454 F.Supp. 1, (D.Mont.1978), *aff'd*, 626 F.2d 718 (9th Cir.1980), *cert. denied* 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981); a written agreement, e.g. *Humboldt County v. U.S.*, 684 F.2d 1276 (9th Cir.1982); or, actual or constructive notice of a deed, e.g. *Yuba Goldfields*, 752 F.2d at 396–7. It is sufficient if the claim constitutes a cloud on the title. *Id.* at 397; *Hatter v. United States*, 402 F.Supp. 1192, 1195 (E.D.Cal.1975). The statute of limitations period must be strict-

ly construed. *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983).

 The Court may look to state law to determine what constitutes constructive notice. *Fulcher v. U.S.,* 696 F.2d 1073, 1076 (4th Cir.1982); *Amoco Production Co. v. U.S.,* 619 F.2d 1383, 1387–88 (10th Cir. 1980). Arizona law is that:

> Where one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable with the knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based.

*Neal v. Hunt,* 112 Ariz. 307, 541 P.2d 559, 563 (1975). This rule is consistent with the reasonableness approach required by 2409a(f).

*Standard of Review*

These are motions for summary judgment. To succeed, the defendants must demonstrate that there are no genuine issues of material fact remaining to be resolved and that they are entitled to a judgment as a matter of law. *Nevada v. United States,* 731 F.2d 633, 635 (9th Cir.1984). This same standard applies when the factual issue is whether a claim is barred by the statute of limitations. *Id.* Factual inferences must be drawn in the light most favorable to the non-moving party. Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question.

*Discussion*

 Any analysis of Chesney's knowledge concerning the disputed lands and the existence of possible adverse claims must begin with the fact that Chesney is, or claims to be an expert in this field. He has lived in the Needles area within a few miles of the disputed land since 1951. He is a civil engineer and has been involved in development projects in the area near the disputed lands for 33 years.

Because Chesney is an expert, he has participated in the preparation and prosecution of at least three lawsuits (not including this one) concerning land along nearby areas of the Colorado river and involving questions of title due to accretive or avulsive movements of the river.

From his experience and expertise, Chesney was familiar with and used the BLM Limited Dependant Resurvey of the disputed lands that was prepared in the early 1960's. He came into possession of those plats as early as 1964. In fact, he used information contained in the Resurvey to defend a charge by the government that he was trespassing on lands within or near the disputed lands in Sections 19 and 24.

The government relies heavily on information contained in the survey to establish that Chesney knew or should have known of the claim. Therefore, determining the significance of the Resurvey is crucial to this analysis. Chesney argues, and rightly so, that a resurvey does not affect the title to land previously established. This is conceded by the government. The government argues, however, that the Resurvey is critical because it is a manifestation of the government's claim. The purpose of the Resurvey is to mark the boundaries of the public lands. In this case, when the disputed lands were surveyed they were platted as accretions to the government (and/or Indian) land. Chesney was apparently aware of this fact by at least 1970.

The government also relies on the fact that the field notes to the BLM Limited Dependant Resurvey of 1963 refer explicitly to the fact that sections 29 and 19 had been acquired by deed together with accretions. It even refers specifically to the deed's recordation number.

Recorded deeds generally act as constructive notice that would suffice under the legal standard in this case to establish that Chesney knew of the claim to those two sections. Chesney disputes that the recording of the deed is sufficient construc-

tive notice to him because it was recorded in Mohave County, Arizona, rather than in California at a time when the borders between the two were uncertain. He further argues that asking this Court to say that the recording of title in Mohave County is sufficient constructive notice assumes the ultimate facts of the litigation, i.e. that the lands accreted to the Arizona side (government side) of the river rather than the California side where Chesney's land is. Had Chesney ever inquired, a prudent title search of the area would have included the records of both sides of the oft changing river border. Furthermore, the lands have been indisputably in Mohave County since 1966, the date of the Arizona-California Boundary Compact.

The one thing that is perfectly clear is that Chesney knew that he did not have quiet title to the disputed lands. He states that the disputed strip was known as "No Man's Land." His activities through the years have established that Chesney knew who held the title to the lands on the other side of the disputed strip, and that if the title was unclear, he would know who the adverse claimant likely would be. Although Chesney claims to have been unaware of the government's claim to the disputed lands, it should be noted that he never says who he thought might have the potential adverse interest if not the government or the tribe.

In 1957, in a discussion with an official of the Colorado River Indian Agency, he sought permission to fence his lands. In a follow-up letter he stated;

> During my conversation with you last month, I believe we agreed that, pending some future court settlement of the accretion question, this line (his deed line short of the disputed accretions) would be a proper one to fence on.

This is not a clear recognition of Indian or government claim to the land, but it certainly recognizes that he does not have clear title to the land and that it will probably require litigation to determine who does. The fact that he sought permission from the Indian Agency is an indication that the Indians may be the potential adverse claimant.

There is other evidence that has been offered by the government to establish that the plaintiff knew of the claim outside the limitations period. That evidence includes a map drawn by Chesney that depicts the area, and various letters referring to parcels in the disputed area. Chesney disputes some of the inferences that may properly be drawn from the correspondence that the government relies on. The Court views that evidence as being inconclusive on the question of knowledge because there are some questions of fact about whether the accretive lands were being referred to. However, rather than raising a material issue of fact sufficient to preclude summary judgment, this other evidence merely underscores the nature and breadth of Chesney's involvement in the area and demonstrates that he knew or reasonably should have known of the government's claim long before 1978.

The standard of knowledge, "knew or should have known", does not permit a party to wait indefinitely to quiet title as against the government. The United States may be sued only if it has consented to be sued. 28 U.S.C. Sec. 2409a constitutes such a consent, but as such it must be strictly construed. *Nevada v. United States,* 731 F.2d 633, 634 (9th Cir.1984). The government has not consented to defend against stale claims against its title. Given the knowledge that Chesney undisputably had about the title to the disputed land, he could not bury his head in the sand (or the dry riverbed, as the case might be) waiting for an adverse party to make a dramatic assertion of a claim. It was incumbent upon him to make some sort of inquiry or take some sort of action to establish his right to the disputed land, and where a claim by the United States is concerned, it is incumbent upon him to do so within 12 years of the time he became aware of the claim. In this case, it is difficult to pinpoint a date where Chesney's cause of action accrued, but there is no

doubt that it was well outside the limitations period. Therefore;

IT IS ORDERED that the motions for summary judgment are GRANTED.