SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MERWYN C. DAVIS, Trustee under the Merwyn C. Davis Trust dated July 27, 1981, | ) Arizona Supreme Court<br>) No. CV-08-0163-PR<br>) |
| Plaintiff/Counter-Defendant/ Appellee, | ) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 06-0806<br>) |
| and | ) |
| CHINO GRANDE, L.L.C., | ) Yavapai County<br>) Superior Court<br>) No. CV 20040716 |
| Plaintiff/Intervenor/Counter-Defendant/Appellee, | )<br>) |
| v. | ) **O P I N I O N** |
| | ) |
| AGUA SIERRA RESOURCES, L.L.C., a Texas limited liability company, | )<br>) |
| Defendant/Counter-Claimant/ Appellant, | )<br>)<br>) |
| and | )<br>) |
| RED DEER CATTLE, INC., a Texas corporation; CJ PARTNERS, a Nevada limited partnership; and SEIBERT FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants/Appellants. | ) |

Appeal from the Superior Court in Yavapai County
The Honorable David L. Mackey, Judge
_____

Opinion of the Court of Appeals, Division One
217 Ariz. 386, 174 P.3d 298 (App. 2008)

**VACATED AND REMANDED**
_____

ROBERT S. LYNCH & ASSOCIATES                               Phoenix
     By   Robert S. Lynch

And

ANNA YOUNG PLLC                                           Prescott
     By   Anna C. Young
Attorneys for Merwyn C. Davis

LEWIS AND ROCA LLP                                         Phoenix
     By   Dale Danneman
          Michael F. McNulty
          Robert G. Schaffer
Attorneys for Chino Grande, L.L.C.

GALLAGHER & KENNEDY, P.A.                                   Phoenix
     By   Michael R. Ross
          Cober C. Plucker

And

TOM GALBRAITH ATTORNEY AT LAW                              Phoenix
     By   Tom Galbraith
Attorneys for Agua Sierra Resources, L.L.C, Red Deer
Cattle, Inc., CJ Partners, and Seibert Family Limited
Partnership

MAGUIRE & PEARCE, PLLC                                      Phoenix
     By   Michael J. Pearce
          Rita P. Maguire
Attorneys for Amicus Curiae Town of Prescott Valley

ARIZONA DEPARTMENT OF WATER RESOURCES                      Phoenix
     By   W. Patrick Schiffer, Chief Counsel
          Kenneth C. Slowinski
          Scott M. Deeny
Attorneys for Amicus Curiae Arizona Department of Water
Resources

RYLEY CARLOCK & APPLEWHITE                                 Phoenix
     By   Cynthia M. Chandley
          L. William Staudenmaier
          Jenny J. Pelton
Attorneys for Amici Curiae Freeport-McMoRan Copper and
Gold, Inc., Roosevelt Water Conservation District, and
the Town of Chino Valley

SALMON, LEWIS & WELDON, P.L.C.                                Phoenix
    By    M. Byron Lewis
          John B. Weldon, Jr.
          Mark A. McGinnis
Attorneys for Amicus Curiae Salt River Project
Agricultural Improvement & Power District

_____

**B A L E S**, Justice

¶ 1        Arizona law allows landowners, outside of Active Management Areas, to make reasonable and beneficial use of groundwater underlying their land.  This case involves deeds that purported to reserve to the grantor, and to sever from the surface estate, rights to the potential future use of groundwater.  Because a landowner has no real property interest in the future use of groundwater, we hold that the attempted reservation is invalid.

                    **FACTS AND PROCEDURAL HISTORY**

¶ 2        This case concerns land in the Chino Valley in Yavapai County that is commonly referred to as the CF Ranch.  In 1981, Red Deer Cattle, Inc. ("Red Deer") bought this land from Chino Ranch, Inc. ("Chino Ranch").  In its 1981 deed to Red Deer, Chino Ranch reserved all mineral rights and "commercial water rights" but did not otherwise retain any ownership interest in the land.  In 1984, Red Deer conveyed the CF Ranch to Merwyn C. Davis, acting as a trustee for a trust bearing his name.  Similar to the 1981 deed, this deed purported to reserve to the grantor "all commercial water rights and waters incident and

3

appurtenant to and within the real property," but provided that Davis could use water for "ranch, livestock and domestic and agriculturally related purposes."

¶ 3        Chino Ranch merged with Red Deer in 1989, thereby consolidating their respective claims to the commercial water rights associated with the CF Ranch. Following a series of conveyances involving third parties, in May 1998, Red Deer and CJ Partners each conveyed a one-half interest in the commercial water rights for the CF Ranch to Agua Sierra Resources L.L.C. ("Agua Sierra").

¶ 4        In April 2003, Davis granted the City of Prescott an option to purchase the CF Ranch and the adjacent CV Ranch, as well as the water rights appurtenant to the two properties, for $30 million. The option agreement included an addendum stating that Davis was uncertain about the water rights on the properties and that his interest "in said water rights may be unclear, incomplete, inappropriately described, or subject to challenge." At the time of the option contract, the properties appraised at $23 million, of which $18 to $21 million was attributable to the associated water rights. Accordingly, the City asked Davis to purchase the water rights so that the City could acquire them. Because Davis was unable to purchase the water rights from Agua Sierra, the City allowed the option to expire.

4

¶ 5	Four months later, Davis filed a complaint against Agua Sierra, Red Deer, CJ Partners, and the Seibert Family Limited Partnership (collectively, the "Agua Sierra parties"), seeking to invalidate the commercial water rights reservations associated with the CF Ranch. The Agua Sierra parties filed an answer raising several affirmative defenses. Agua Sierra separately filed a counterclaim seeking a judgment declaring the water rights reservation to be valid and quieting title to all commercial water rights on the CF Ranch. In the alternative, Agua Sierra sought to rescind the 1984 conveyance to Davis.

¶ 6	On cross-motions for summary judgment, the trial court held the reservation invalid and entered judgment for Davis. In doing so, the trial court relied on opinions of this Court stating that "there is no right of ownership of groundwater in Arizona prior to its capture and withdrawal," *Town of Chino Valley v. City of Prescott* ("*Chino Valley II*"), 131 Ariz. 78, 82, 638 P.2d 1324, 1328 (1981), and that "water rights cannot be established or reserved for some potential future use," *In re the Rights to the Use of the Gila River Sys.* ("*Gila River I*"), 171 Ariz. 230, 239, 830 P.2d 442, 451 (1992). After entering judgment, the trial court added Chino Grande, L.L.C. ("Chino Grande") as a party because it had bought the CF Ranch from Davis. The Agua Sierra parties timely appealed.

¶ 7	The court of appeals vacated the trial court's

5

judgment, holding that Arizona law allows a grantor to reserve rights to the prospective commercial use of percolating groundwater beneath the land conveyed. *Davis v. Agua Sierra Res., L.L.C.*, 217 Ariz. 386, 392-97 ¶¶ 21-42, 174 P.3d 298, 304-09 (App. 2008). Without addressing other arguments by the Agua Sierra parties challenging the judgment for Davis, the court of appeals remanded for the trial court to determine whether the commercial water rights at issue are limited to percolating groundwater or also include surface-water rights. *Id*. at 397 ¶ 45, 174 P.3d at 309.

¶ 8        We accepted review because this case presents an issue of first impression and statewide importance. Our jurisdiction is based on Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

### DISCUSSION

**A.        Arizona Groundwater Law**

¶ 9        The 1981 and 1984 deeds for the CF Ranch purport to reserve to the grantor, and thus to sever from the surface estate, all "commercial water rights." The parties agree that there has not been any historical use of such water rights on the CF Ranch and that there is no issue before the Court regarding appropriable waters. This case instead involves the potential future use of groundwater that has never been captured

6

and put to reasonable use.

¶ 10    Arizona law distinguishes groundwater from surface water, even though such waters may be hydrologically connected. John D. Leshy & James Belanger, *Arizona Law Where Ground and Surface Water Meet*, 20 Ariz. St. L.J. 657, 659 (1988). Surface water is subject to the doctrine of prior appropriation. *In re the Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source* (*"Gila River IV"*), 198 Ariz. 330, 334 ¶ 3, 9 P.3d 1069, 1073 (2000). In contrast, under Arizona's common law, groundwater "is not appropriable and may be pumped by the overlying landowner, subject to the doctrine of reasonable use." *Id.*

¶ 11    Because others have detailed the history of Arizona groundwater law, *see Cherry v. Steiner*, 543 F. Supp. 1270, 1273-76 (D. Ariz. 1982), *aff'd*, 716 F.2d 687 (9th Cir. 1983); Leshy & Belanger, *supra*, at 666-700, we present only a brief overview here. Arizona's common law evolved from the territorial-day view that a landowner has a property interest in groundwater underlying the surface estate. *E.g.*, *Howard v. Perrin*, 8 Ariz. 347, 353, 76 P. 460, 462 (1904) ("Throughout the Pacific Coast, where the doctrine of appropriation obtains, the decisions are uniform to the effect that waters percolating generally through the soil beneath the surface are the property of the owner of the soil . . . ."). Later decisions clarified that land

7

ownership does not include ownership of the groundwater itself, but instead may afford a qualified right to extract and use the groundwater for the benefit of the land. *Chino Valley II*, 131 Ariz. at 82, 638 P.2d at 1328.

¶ 12    Recognizing that groundwater is vital to our state, Arizona's legislature in 1980 established a comprehensive regulatory framework by enacting the Groundwater Management Act (the "GMA"). 1980 Ariz. Sess. Laws, ch. 1, § 86 (4th Spec. Sess.) (codified as amended at A.R.S. §§ 45-401 to -704 (2003 & Supp. 2008)). With the goal of reducing the state's overdraft of groundwater, the GMA created a system of groundwater rights and conservation requirements. *Id*. § 45-401.

¶ 13    The GMA divided the state into three categories: Active Management Areas ("AMAs"), *id*. § 45-411, Irrigation Non-Expansion Areas ("INAs"), *id*. § 45-431, and areas outside a designated AMA, *id*. § 45-453. AMAs are "geographical areas where groundwater supplies are imperiled." *Chino Valley II*, 131 Ariz. at 79 n.*, 638 P.2d at 1325 n.*. In such areas, a person may withdraw and use groundwater only in accordance with the GMA's detailed regulations. A.R.S. § 45-451(A)(1).

¶ 14    The CF Ranch, located within the Big Chino sub-basin, is not within an AMA and thus is not subject to the extraction and use limits applicable to AMAs. The GMA, however, does govern the withdrawal of groundwater on land outside an AMA if

8

the water is to be transported to an established AMA. *Id*. § 45-551.

¶ 15      The Prescott Active Management Area includes the City of Prescott. *Id*. § 45-411(A)(3). The GMA thus regulates any withdrawal and transportation of groundwater from the CF Ranch to the City of Prescott. In general, the GMA provides that "[i]n areas outside of active management areas, a person may: 1. Withdraw and use groundwater for reasonable and beneficial use, except as provided in article 8.1 of this chapter. 2. Transport groundwater pursuant to articles 8 and 8.1 of this chapter." *Id*. § 45-453. Article 8.1 further provides that in the case of the Big Chino sub-basin,

> [a] city or town that owns land consisting of historically irrigated acres in the Big Chino sub-basin of the Verde River groundwater basin, as designated by order of the director dated June 21, 1984, or a city or town with the consent of the landowner, may withdraw from the land for transportation to an adjacent initial active management area an amount of groundwater determined pursuant to this section.

*Id*. § 45-555(A). The GMA limits the annual transportation allotment based on the historically irrigated acres retired from irrigation. *Id*. § 45-555(B).

¶ 16      Although the Agua Sierra parties claim they own the "commercial water rights" reserved by the prior owners of the CF Ranch, the GMA does not recognize the existence of anything

9

called a "commercial water right" to groundwater.

**B.      Future Rights to Groundwater**

¶ 17     The court of appeals held that a grantor may reserve rights to the commercial use of percolating groundwater beneath land that the grantor no longer owns. *Davis*, 217 Ariz. at 396 ¶ 43, 174 P.3d at 308.  In so holding, the court reasoned that a landowner has a property right to the "usufruct" of underlying groundwater and that this right is subject to the general common law rule that "[a] grantor has the right to make a reservation of an interest in real property."  *Id.* at 393 ¶ 23, 174 P.3d at 305 (quoting *Phoenix Title & Trust Co. v. Smith*, 101 Ariz. 101, 106-07, 416 P.2d 425, 430-31 (1966)).     Supporting this conclusion, the Agua Sierra parties argue that the right to prospectively use groundwater is one of the "sticks" in the bundle of a landowner's property rights, and the landowner can reserve this stick when conveying the surface estate to another.

¶ 18     For a deed reservation of commercial groundwater rights to be valid, however, the grantor must in fact have a real property interest in such rights.  Thus, we first consider whether Arizona law recognizes a real property right to the potential future use of groundwater.

¶ 19     This Court has noted that "Arizona law recognized no right to reserve water for some potential future use." *Gila River I,* 171 Ariz. at 239, 830 P.2d at 451.   The court of

10

appeals dismissed this language as irrelevant to the validity of Agua Sierra's reservation of commercial water rights, stating that *Gila River I* concerned only appropriable surface waters (which include surface-stream subflows) and not percolating groundwater. *Davis*, 217 Ariz. at 395 ¶ 37, 174 P.3d at 307. *Gila River I*, however, cannot be read so narrowly.

¶ 20     *Gila River I* concerned both real property owners who claimed rights to appropriable subflows and other land owners who claimed that their interests would be impacted by any legal determination of "when underground water is appropriable." 171 Ariz. at 239, 830 P.2d at 451. The second group, who were not then using groundwater, claimed that they had a property right to use groundwater in the future, and thus were entitled to constitutionally adequate notice in the Gila adjudication. *Id*. The Court squarely rejected this argument: "Having no legally recognized property right in potential, future groundwater use, they have no due process rights of which they could be deprived." *Id*.

¶ 21     The Court in *Gila River I* also cited its earlier decision *Chino Valley II*, which addressed groundwater rights under the GMA, not appropriable water rights. *Gila River I*, 171 Ariz. at 239, 830 P.2d at 452 (citing *Chino Valley II*, 131 Ariz. at 82, 638 P.2d at 1328). In *Chino Valley II*, we stated that "[i]n the absolute sense, there can be no ownership in seeping

11

and percolating waters until they are reduced to actual possession and control by the person claiming them because of their migratory character. Like wild animals free to roam as they please, they are the property of no one." 171 Ariz. at 82, 638 P.3d at 1328. Thus, we held that "there is no right of ownership of groundwater in Arizona prior to its capture and withdrawal from the common supply and that the right of the owner of the overlying land is simply to the usufruct of the water." *Id.*

¶ 22 *Chino Valley II* used the term "usufruct" to describe the rights of landowners with respect to underlying groundwater. But *Chino Valley II*'s use of that term does not mean that landowners have some vested real property right in the potential use of groundwater. *See Gila River IV*, 198 Ariz. at 344, 9 P.3d at 1083 (citing *Chino Valley II* and *Gila River I* to reject landowners' claim that an expansive definition of "subflow" resulted in a taking of private property rights to future groundwater use). Rather, as *Chino Valley II* makes clear, the landowner's right is perhaps better described as an unvested expectancy insofar as it concerns the potential future use of groundwater that has never been captured or applied. This is why this Court concluded in *Chino Valley II*, and the federal courts concluded in *Cherry*, that the restrictions on groundwater use under the GMA did not unconstitutionally infringe the rights

12

of landowners.

¶ **23**      Recognizing that Arizona's groundwater is a critical public resource, the legislature has granted landowners outside of AMAs a limited right, essentially an opportunity, to pump groundwater for reasonable and beneficial uses as permitted by the GMA. *See* A.R.S. §§ 45-453, -541 to -554; *see also* Leshy & Belanger*, supra,* at 715-16 (discussing GMA's impact on reasonable use doctrine). The legislature is free to choose between competing uses of groundwater and to modify such rights in the public interest as an exercise of its police power. *Chino Valley II*, 131 Ariz. at 83-84, 639 P.2d at 1329-30; *Sw. Eng'g Co. v. Ernst*, 79 Ariz. 403, 409-10, 291 P.2d 764, 768-69 (1955).

¶ **24**      Agua Sierra and its predecessors have not identified any pre-existing or current use of the groundwater underlying the CF Ranch that is embraced by the reservation of commercial water rights. Arizona law does not recognize a real property interest in the potential future use of groundwater that has never been captured and applied to reasonable use.[1]

   **C.**      **Severability of Right to Potential Use of Groundwater**

¶ **25**      The Agua Sierra parties also argue that the deed

---

[1] We do not here address the circumstances in which the owner of the surface estate may, consistent with the GMA, grant others contractual rights to withdraw, use, or transport groundwater from beneath the owner's land.

13

reservations were at least effective to sever and reserve to the grantor whatever "rights" a surface owner would otherwise have to the future use of groundwater. We therefore consider whether a landowner's qualified "right" or expectancy to the potential use of groundwater is an interest that can be severed from the surface estate.

¶ 26    The court of appeals observed that "Arizona law generally permits the severance and transfer of water rights from the associated real property." *Davis*, 217 Ariz. at 392 ¶ 21, 174 P.3d at 304 (citing *W. Maricopa Combine, Inc. v. Ariz. Dep't of Water Res.*, 200 Ariz. 400, 407 ¶ 35, 26 P.3d 1171, 1178 (App. 2001)). The court further noted that the right to use groundwater is a property right, *id*. at ¶ 22 (citing *Paloma Inv. Ltd. P'ship v. Jenkins*, 194 Ariz. 133, 138 ¶ 22, 978 P.2d 110, 115 (App. 1998)), and that because this right is a hereditament, it must be conveyed by deed, *id*. (citing *Neal v. Hunt*, 112 Ariz. 307, 310-11, 541 P.2d 559, 562-63 (1975)).

¶ 27    The cases cited by the court of appeals, however, do not establish a severable right to the potential future use of groundwater. *West Maricopa Combine* involved the transfer of Central Arizona Project water via the Hassayampa riverbed. 200 Ariz. at 402 ¶ 1, 26 P.3d at 1173. In rejecting arguments by landowners that they could prohibit such transfers through their property, the court of appeals discussed how Arizona law

14

distinguishes water rights from real property rights. *Id*. at 407-08 ¶¶ 35-40, 26 P.3d at 1178-79. In this context, the court cited its earlier decision in *Paloma* for the proposition that water rights can be bought and sold distinct from land. *W. Maricopa Combine,* 200 Ariz. at 407 ¶ 35, 26 P.3d at 1178.

¶ 28    *Paloma*, however, did not involve the severance of a right to the potential future use of groundwater. Instead, *Paloma* concerned a water rights agreement giving one party a share of the proceeds from future sales of water from the land by the fee owner. *See* 194 Ariz. at 138 ¶ 24, 978 P.2d at 115 ("We recognize that [the] interest is not to use the water itself, the ordinary form of water rights."). The court of appeals characterized this right as a "royalty interest" that, as a real property interest, bound successor landowners. *Id*. at ¶ 25-26. Thus, even if we assume arguendo that it was correctly decided, *Paloma* does not establish the right of a grantor to sell groundwater from land that it no longer owns.

¶ 29    Nor did this Court in *Neal* decide whether the potential use of groundwater is a property right severable from the overlying land. In that case, the grantor reserved certain water rights to a ranch he had sold. 112 Ariz. at 309, 541 P.2d at 561. Citing *George v. Gist*, 33 Ariz. 93, 263 P. 10 (1928), the Court stated that water rights in land must be conveyed by deed and that conveyances of groundwater, a hereditament, are

15

subject to the recording statute. *Neal*, 112 Ariz. at 310-11, 541 P.2d at 562-63. We did not address the validity of such a reservation in *Neal*, but rather held only that if not recorded, a reservation cannot be effective against a subsequent bona fide purchaser who lacks notice. 112 Ariz. at 311, 542 P.2d at 563.

¶ 30    *Neal* preceded this Court's decision in *Chino Valley II,* which rejected as dicta language in prior decisions, including *Howard*, suggesting that a landowner may have a property interest in groundwater. *See Chino Valley II*, 131 Ariz. at 81, 638 P.2d at 1327. Given *Chino Valley II*, our holding in *Neal* cannot be understood as holding that rights to the potential future use of such water may be severed from the overlying land by a deed reservation.

¶ 31    On the issue of severability, more pertinent is the language of the GMA itself, which provides that the landowner must consent to the transportation of water off the property:

> A city or town that owns land consisting of
> historically irrigated acres in the Big
> Chino sub-basin of the Verde River
> groundwater basin . . . or a city or town
> *with the consent of the landowner*, may
> withdraw from the land for transportation to
> an adjacent initial active management area
> an amount of groundwater determined pursuant
> to this section.

A.R.S. § 45-555(A)(emphasis added).

¶ 32    Section 45-555(A) presumes that a landowner has authority to consent to a city or town's withdrawing water from

16

the land for transportation. But a landowner would not be able to grant such consent if a prior owner could reserve and sever from the land the rights to the potential future use of groundwater. If the legislature had contemplated that such rights exist and are transferable apart from the land, we do not believe the legislature would have required the consent of the landowner for the withdrawals contemplated by § 45-555(A).

¶ 33    We recognize that there are many policy arguments for or against allowing the transfer, outside of AMAs, of rights to prospectively use groundwater, but those arguments should be weighed by the legislature if it thinks it desirable to amend this aspect of the GMA. *See Chino Valley II*, 131 Ariz. at 81, 83, 638 P.2d at 1327, 1329 ("[I]f any change in the law is necessary, it should be made by the Legislature.").

## CONCLUSION

¶ 34    For the reasons stated, we hold that landowners outside of AMAs do not have a real property interest in the potential future use of groundwater that may be severed from the overlying land. Accordingly, we vacate the opinion of the court of appeals and remand so that court may consider other properly preserved arguments by the Agua Sierra parties challenging the trial court's judgment for Davis.

_____
W. Scott Bales, Justice

17

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice