257 P.2d 393

**GILLESPIE LAND & IRRIGATION CO. v. BUCKEYE IRR. CO. et al.**

No. 5273.

Supreme Court of Arizona.

May 18, 1953.

Clark & Clark and W. T. Elsing, Phœnix, for appellant.

Jennings, Strouss, Salmon & Trask, Phoenix, for appellee Salt River Valley Water Users' Ass'n.

Gust, Rosenfeld, Divelbess, Robinette & Linton, Phoenix, for appellee Gila Valley Irr. Dist.

Whitney, Ironside & Whitney, Phoenix, for appellee Maricopa County Municipal Water Conservation Dist. No. 1.

Moeur & Moeur, Phoenix, attorneys for appellee Roosevelt Water Conservation Dist.

Fennemore, Craig, Allen & Bledsoe, Phoenix, for appellee Kennecott Copper Co.

Evans, Hull, Kitchel & Jenckes, Phoenix, for appellee Phelps Dodge Corp.

Floyd M. Stahl and L. M. Laney, Phoenix, for appellees Buckeye Irr. Dist. and Arlington Canal Co.

Kramer, Morrison, Roche & Perry, Phoenix, for appellee Roosevelt Irr. Dist.

Reed, Wood & Mangum, Coolidge, for appellee San Carlos Irr. Dist.

STANFORD, Chief Justice.

This case presents an appeal from a judgment of the lower court dismissing the complaint in intervention filed by the Gillespie Land and Irrigation Company, which complaint in intervention had theretofore been filed in an action wherein the Buckeye Irrigation Company and Arlington Canal Company were plaintiffs, and the Salt River Valley Water Users' Association was one of 5,206 defendants. The purpose of the original litigation was to determine the rights of the plaintiffs and defendants in and to the waters of the Gila River System. The Gillespie Company, by its complaint in intervention, alleged that it had certain rights in and to the waters of the Gila River and its tributaries, and asked to have these rights determined and adjudicated and sought injunctive relief against the plaintiffs and defendants in so far as their use interfered with the claimed rights of the Gillespie Company. A large number of the defendants filed answers denying that intervener had any valid or existing appropria-

tions of, or rights to the use of, any of the waters of the Gila River and its tributaries.

At this stage of the pleadings intervener filed its motion that

"* * * the Court enter an order herein referring this cause to the State Water Commissioner for fact finding as provided in Section 75–114, Arizona Code Annotated, 1939, and such other provisions of the statutes as may apply to such proceeding."

Then a number of defendants filed their separate applications for the court to direct a "separate trial upon intervener's right of appropriation to the waters of the Gila River." By such applications the defendants denied that "the intervener ever had any valid appropriation of the waters of said river for the reason that its (intervener's) predecessors who claimed such right of appropriation owned none of the lands which it now claims to be irrigated and cultivated." The application further stated that

"* * * if said cause is set for trial in its entirety, a trial will result extending over a period of months during which intervener will claim its dates of appropriation and various defendants will spend months in proving the dates of appropriations for their various respective lands, and that if it be then determined that intervener had no right of appropriation whatsoever, any other proof in the case will be unnecessary * * *."

On July 17, 1947, Presiding Judge Henry C. Kelly entered an order that

"* * * the issues raised by intervener's claims of right to the use of waters of the Gila River and its tributaries, as set forth in intervener's pleadings, and defendants' answers thereto, be set for trial, for the purpose only of determining the extent, priority dates and status of intervener's claims to the appropriation, and use, of the waters of the Gila River, and that upon such determinations being made, the issues then remaining be tried and determined."

The hearing on the foregoing order was had before Judge Gordon Farley, at which time the intervener introduced evidence both oral and documentary, at the close of which plaintiffs and defendants moved to dismiss the complaint in intervention.

The evidence to which the motion was addressed disclosed that the intervener owns and maintains a dam (Gillespie Dam) in the Gila River at a point below where the Salt River enters the Gila. This dam is approximately 18 miles west of Buckeye, Arizona. From the dam there extends a large canal for a distance of approximately 42 miles to the intervener's lands which are some 8 miles west of Gila Bend.

Beginning with the year 1881 up to 1919, various individuals and corporations had attempted to initiate appropriations from the Gila River at the present site of the Gillespie Dam. Several of the predeces-

sors in interest of the Gillespie Company had organized canal companies and had built dams in the river, all of which had washed out. After 1901 the dam site and the rights-of-way for the canal were owned by a corporation known as the Gila Water Company. On March 24, 1919, a Mr. Frank A. Gillespie acquired all the capital stock of the Gila Water Company. At this time the Gila Water Company did not own any land, nor did it or its predecessors in interest own any land that might have been irrigated from any dam that might have been erected at the dam site in question.

On March 24, 1919, a W. J. Murphy and F. A. Gillespie entered into a contract wherein Murphy acted as the representative and agent of the Gila Water Company. Briefly, this contract provided for the transfer of the stock and bonds of the company to Gillespie, who would put up certain money to construct the dam and canals of the company to deliver water to 72,000 acres of Santa Fe land which Murphy asserted he had authority to convey, and which under the contract were to be conveyed to the Gila Water Company when acquired by Gillespie. Under date of December 5, 1916, the Santa Fe Pacific Railroad Company had given an option to purchase these lands to J. C. Adams, which Adams assigned to Murphy. On March 26, 1919, the lands were conveyed from the Santa Fe to F. A. Gillespie, who in turn on May 31, 1919, deeded the same to the Gila Water Company. In 1929 the appellant, Gillespie Land and Irrigation Company, was organized and acquired all the interests of the Gila Water Company.

Preliminary surveys for the dam were made in April, 1919, and the actual construction on the present dam was begun in June, 1919 and completed in June of 1921. Intervener's land holdings consist of some 82,000 acres. The evidence discloses that waters diverted from the river by the dam and canal system were first applied to some of the acreage in 1922. By the year 1929 the intervener had put under irrigation approximately 21,000 acres. No evidence was offered as to how many hundreds or thousands of acres were brought under irrigation in any particular year, nor was there any evidence to disclose what particular 21,000 acres were irrigated. That is, the legal description of the grounds irrigated was never established, nor was there any evidence establishing the amount of water put to a beneficial use in any particular year.

Intervener's proof established that its canal was 65 feet between top banks, 10 feet deep and 25 feet in width on the bottom with a carrying capacity of 750 cubic feet of water per second. This, expressed in acre feet, is 547, 489 acre feet per year, and if delivered in its entirety without evaporation, seepage or other transportation losses would provide approximately 6½ acre feet of water per year for each of the 82,290 acres in the project.

Some of the grounds for the motion to dismiss were:

"1. The intervener and its predecessors in interest obtained no rights in the Gila River, because intervener's predecessors in interest under which it was claiming certain appropriations had owned no land until May 31, 1919; and there was no ownership of land, or any agency for owners or possessors of land shown by the evidence;

"2. * * *

"3. It was not until May 31, 1919, that there was any union of title between the canal company, the Gila Water Company, and the ownership of the lands, which date was subsequent to the filing in the office of the Secretary of State on March 26, 1919 of the Water Code of 1919 (Chapter 164, Laws of 1919);

"4. No notice of any appropriation was posted or recorded, and no other required steps were taken by the owners of any lands, under the laws in effect prior to the 1919 Water Code to initiate or perfect any appropriation for the use of any water upon any of the lands described in intervener's complaint;

"5. * * *

"6. No steps were initiated for the appropriation of any water prior to the filing of the 1919 Water Code in the office of the Secretary of State on March 26, 1919;

"7. No application for any water right was filed with the State Water Commissioner after the passage of the Water Code of 1919, and there was no showing of any compliance with the provisions of that act;

"8. There was no evidence as to the lands on which any of the water was applied in 1922, or subsequently, or when it was applied, or the amount of water available; and there was no evidence, upon which the Court could base a decision, of the application to beneficial use of any of the waters of the Gila River at any time to any particular part or parcel of land owned by the intervener and described in the complaint."

The trial court also took cognizance of the fact that the state legislature in 1919 enacted a comprehensive state water code, effective June 12, 1919, Chapter 164, Session Laws 1919. Art. 1, Chap. 75, A.C.A. 1939, §§ 75–101 to 75–144. This Act, among other things, declares certain waters to be public and subject to appropriation and beneficial use. It also provides who may appropriate, and the terms and conditions under which appropriations may be made, and that no appropriation can be made except upon a permit issued by the state water commissioner. The intervener admitted that it at no time had made any attempt to comply with the provisions of this code and claims no appropriative rights thereunder.

The Act also contains the following saving clause:

"Section 56. Nothing in this act contained, shall impair the vested rights of any person, association or corporation to the use of water.

"Nor shall anything in this act contained, affect relative priorities to the use of water between or among parties to any decree of the courts rendered in causes determined or pending prior to the taking effect of this act.

"Nor shall the right of any person, association or corporation to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated prior to the filing of this act in compliance with laws then existing, and such appropriators, their heirs, successors or assigns shall, in good faith and in compliance with the laws existing at the time of the filing of this act in the office of the Secretary of State, commence the construction of works for the application of the water so appropriated to a beneficial use and thereafter prosecute such work diligently and continuously to completion, but all such rights shall be adjudicated in the manner provided in this act."

It is to be noted that by this saving clause of the Act any vested rights or any rights that had been initiated "at the time of the filing of this act in the office of the Secretary of State" were not impaired or affected by the provisions of the Act. The Act was passed without the emergency clause and was filed in the office of the secretary of state on the 26th day of March, 1919. The Act, not having carried the emergency clause, under the provisions of the Constitution became effective June 12, 1919, being ninety days after the legislature adjourned. The intervener contends that the provisions of the saving clause attempting to limit the protection of vested and initiated rights to the date of the filing of the Act in the office of the secretary of state, is unconstitutional in that the Act did not become effective until June 12, 1919, being ninety days after the legislature adjourned. It is appellees' contention that only those rights initiated prior to the filing of the Act in the office of the secretary of state, and capable of being prosecuted to completion, were protected. These contentions explain the references to the date of March 26, 1919, made in paragraphs 3 and 6, supra, of the motion to dismiss. In view of the disposition to be made of this case and of our view of the law applicable, it is not necessary to pass on this point of contention.

It is the position of intervener that when the present water code, Chapter 164, Session Laws 1919, became effective, the laws then existing provided three methods for the acquisition of vested rights to the use of water in running streams, viz.:

1. Actual application to beneficial use, under the prior right doctrine in force from the time the Territory was organized in 1864, until the adoption of the present Water Code in 1919.

2. Appropriations pursuant to Ch. 86, Laws of 1893, § 2; Rev.St.1901, § 4170; Rev.St.1913, § 5338, commonly referred to as the statutory method.

3. By contract of landowner with a canal company pursuant to the principles promulgated by the Supreme Court of Arizona in Slosser v. Salt River Valley Canal Co., 1901, 7 Ariz. 376, 65 P. 332.

Without attempting to analyze or pass judgment on any of these so-called methods of appropriation and whether intervener brought itself under any of them, we think that it is advisable to first consider intervener's first assignment of error to the effect that the trial court erred in dismissing its complaint in intervention and entering judgment in favor of plaintiffs and defendants and against the intervener, for the asserted reason (by intervener) that this order and judgment

"* * * constituted an adjudication of matters and claims not then in issue, and in respect to which no proof was offered or received, and all of which had been expressly excluded from consideration in the order for the preliminary trial, and the matters to be tried and settled and that were specifically submitted for adjudication under said order, were left wholly undetermined."

Intervener insists that the trial court was committed to make the determinations specified in the written application of defendants for a separate or preliminary trial, and the order of the court of June 17th, granting the application and directing a trial for the specific purpose of determining the extent, priority and status of intervener's claims.

Presumably it means that it had the effect of determining the rights of plaintiffs and defendants upon which no evidence was offered. The order of dismissal had no such effect. The trial never got down to the point of determining the rights of plaintiffs and defendants. That would only have occurred when and if the court had determined that the intervener had made an appropriation, its extent, priority, and status, which determination, in part, could only have been made upon evidence as to the extent of the claimed appropriation.

Intervener assumes that the order dismissing its complaint in intervention was upon the sole ground that neither the intervener nor its predecessors had made or initiated an appropriation. In this behalf intervener, without warrant, restricts and limits the ground of the motion to dismiss. If the trial court was justified in dismissing the complaint upon any one of the grounds stated in the motion, its judgment on appeal will not be disturbed. One of the grounds of the motion was to the ef-

fect that there was no evidence of the quantity of water beneficially used or the particular ground on which used. One of the purposes of the preliminary hearing was to determine the extent of the claimed appropriation. This matter of the quantity of the water and the description of the lands on which beneficially used was directly in issue.

■ The purpose of the preliminary hearing was to determine "the extent, priority dates and status of intervener's claims to the appropriation, and use, of the waters of the Gila River". It was incumbent upon intervener at this hearing to first prove that it had made an appropriation of unappropriated waters, and then the extent thereof; that is, the amount or quantity of water beneficially used and the specific lands upon which the waters were used. Slosser v. Salt River Valley Canal Co., supra; Gould v. Maricopa Canal Co., 8 Ariz. 429, 76 P. 598; Brockman v. Grand Canal Co., 8 Ariz. 451, 76 P. 602; Tattersfield v. Putnam, 45 Ariz. 156, 41 P. 2d 228; Olsen v. Union Canal & Irr. Co., 58 Ariz. 306, 119 P.2d 569. The holding in all of these cases is to the effect that a water right is attached to the land on which it is beneficially used and becomes appurtenant thereto, and that the right is not in any individual or owner of the land. It is in no sense a floating right, nor can the right, once having attached to a particular piece of land, be made to do duty to any other land, with certain exceptions,

e. g., where the land is washed away. Section 75–135, A.C.A.1939. Intervener's proof was that at one time in 1929 it had irrigated as much as 21,000 acres located somewhere in a tract containing 82,000 acres. No proof was offered as to the quantity of water beneficially used on the 21,000 acres nor to what legal subdivision it was beneficially applied. Why, under this state of the record, the intervener complains of the action of the trial court in this behalf is not discernible to us. The trial court was sitting for the very purpose of determining the extent, priorities and status of intervener's claimed rights. When no proof was offered on the extent of appropriation, i. e., quantity of water beneficially used and the particular lands upon which used, the motion to dismiss was presented and there was nothing for the trial court to do other than dismiss the complaint in intervention.

No evidence having been offered as to the extent of intervener's claimed appropriation, the trial court was not in a position to determine whether intervener had made an appropriation nor could it determine its priority or status even if it be assumed that the appropriation could have been or was made under any of the three suggested or claimed methods of appropriation.

We are not determining in this case that the intervener has no rights in the river but we are holding that as against the plaintiffs and defendants it failed to prove

two of the essentials of a valid appropriation, i. e., the quantity of water beneficially used and the particular grounds on which used.

The judgment dismissing intervener's complaint in intervention is affirmed.

PHELPS, LA PRADE, UDALL, and WINDES, JJ., concurring.