836 P.2d 389

**ARIZONA WATER COMPANY,**
**an Arizona corporation,**
**Plaintiff/Appellant,**

v.

**CITY OF BISBEE, Defendant/Appellee.**

No. 2 CA–CV 91–0027.

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 24, 1991.

Review Denied Sept. 22, 1992.

Fennemore Craig by Timothy Berg and Janice Procter–Murphy, Phoenix, for plaintiff/appellant.

Mesch, Clark & Rothschild, P.C. by Tom R. Clark, Scott H. Gan and Craig Cameron, Tucson, for defendant/appellee.

Shelley, Bethea & Tolman by J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns.

OPINION

FERNANDEZ, Judge.

This case involves the right of appellee City of Bisbee to deliver sewage effluent from its sewage treatment plant to the Phelps Dodge Corporation (PD) for use in PD's copper leaching operation. Appellant Arizona Water Company, which holds a certificate of convenience and necessity to provide water service in the same area, contends that the city has no right to deliver the effluent. The trial court ruled in favor of the city, and we affirm.

The city processes sewage through its Mule Gulch Wastewater Treatment Facility, which is located within Arizona Water's

service area. In 1986, after the United States Environmental Protection Agency notified the city that the discharge from the facility did not meet federal requirements, the city contracted with PD to deliver 100,000 to 300,000 gallons of sewage effluent per day to the PD leaching operation. In return, PD leased two pumps and a pipeline to the city for transporting the effluent from the treatment facility to the leaching operation. The effluent contains pathogenic bacteria, fecal coliform bacteria, and metals such as arsenic and cadmium. It is not fit either for irrigation purposes or for human consumption.

When Arizona Water learned of the city's effluent delivery, it demanded that the city cease "providing water service" within Arizona Water's service area. After the city refused, Arizona Water filed suit seeking a declaratory judgment, injunctive relief, and damages for inverse condemnation. It then moved for partial summary judgment. At the hearing, the city made an oral motion for summary judgment, which the trial court later granted.

Arizona Water contends on appeal that the city's delivery of water within Arizona Water's certificated area constitutes a competing service in violation of A.R.S. §§ 9–515 and 9–516. As a result, Arizona Water contends that the city has taken its property without just compensation. Because the parties do not dispute the facts of this case, we examine the trial court's ruling on the legal issues and can substitute our own ruling if necessary. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966); *Fountain Hills Civic Association v. City of Scottsdale*, 152 Ariz. 569, 733 P.2d 1152 (App.1986).

Arizona Water derives its authority to provide water service pursuant to its certificate of convenience and necessity from the Arizona Constitution.

All corporations other than muncipal engaged in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protection, or other public purposes; ... or engaged in collecting, transporting, treating, purifying and disposing of sew-

age through a system, for profit; ... shall be deemed public service corporations.

Ariz. Const. art. 15, § 2. That provision does not directly address the issue before us, but we note that it distinguishes between public service corporations furnishing water and those "collecting, ... treating, ... and *disposing* of sewage." (Emphasis added.)

■ Arizona Water argues that the city's delivery of effluent from its sewage treatment facility renders it a competitor of Arizona Water in violation of the statutes. A.R.S. § 9–515 provides, in pertinent part, as follows:

A. When a municipal corporation and the residents thereof are being served under an existing franchise by a public utility, the municipal corporation, before constructing, purchasing, acquiring or leasing, in whole or in part, a plant or property engaged in the business of supplying services rendered by such public utility, shall first purchase and take over the property and plant of the public utility.

A.R.S. § 9–516 provides in part:

A. It is declared as the public policy of the state that when adequate public utility service under authority of law is being rendered in an area, within or without the boundaries of a city or town, a competing service and installation shall not be authorized, instituted, made or carried on by a city or town unless or until that portion of the plant, system and business of the utility used and useful in rendering such service in the area in which the city or town seeks to serve, has been acquired.

Citing those statutes and the cases of *City of Mesa v. Salt River Project Agricultural Improvement & Power District*, 92 Ariz. 91, 373 P.2d 722 (1962), and *Sende Vista Water Co. v. City of Phoenix*, 127 Ariz. 42, 617 P.2d 1158 (App.1980), Arizona Water claims that the city owes it damages for inversely condemning its equipment and facilities by distributing effluent to PD's copper leaching operation. That claim requires us to analyze the nature of effluent.

As Arizona Water notes, the only statutory definition of effluent appears in the Arizona Groundwater Code. A.R.S. § 45–402(6) states that effluent "means water which, after being withdrawn as groundwater or diverted as surface water, has been used for domestic, municipal or industrial purposes and which is available for reuse for any purpose, whether or not the water has been treated to improve its quality." That definition is separate from the definitions of both groundwater and surface water. A.R.S. § 45–101(4) and (6). The public service corporation statutes also define "sewerage system" separately from "water system." A.R.S. § 40–201(8) and (15). Effluent cannot be used for fertilization or irrigation without the specific approval of the department of health services or the department of environmental quality; without that approval, it constitutes a public and environmental nuisance. A.R.S. §§ 36–601(A)(14); 49–141(7). In addition, state and federal laws govern the discharge of effluent from sewage treatment facilities. See, e.g., A.R.S. § 49–241 and 33 U.S.C. §§ 1311, 1312, 1317, and 1342. We also note that laws governing effluent disposal are found in the statutes on community facilities districts, A.R.S. §§ 48–701 through 48–724, and on sanitary districts, A.R.S. §§ 48–2001 through 48–2085.

The case of *Arizona Public Service Co. v. Long*, 160 Ariz. 429, 773 P.2d 988 (1989), is the only Arizona decision that discusses a city's power to dispose of effluent. In *Long*, downstream property owners challenged the validity of contracts entered into between a group of cities and a group of public utilities for the sale of sewage effluent for use in the utilities' nuclear power plant, arguing that the contracts deprived them of their appropriative water rights because the cities were no longer discharging the effluent into the stream. The court analyzed the nature of effluent as follows:

Until such time as it is returned to the ground as either groundwater or surface water, it is nothing more than sewage effluent, which was described in *City of Phoenix v. Long*, [158 Ariz. 59, 63, 761 P.2d 133, 137 (App.1988),] as 'a noxious by-product of the treatment of sewage which the cities must dispose of without endangering the public health and without violating any federal or state pollution laws.'

*Id.* 160 Ariz. at 434, 773 P.2d at 993. It then concluded as follows:

In summary, we hold that the effluent in question is neither groundwater nor surface water. Whether diverted by appropriation or withdrawn from the ground, after use by the municipalities the water loses its original character as groundwater or surface water and becomes, instead, just what the statute describes—effluent. *See* A.R.S. § 45–402(6). The Cities' expenditure of tens if not hundreds of millions of dollars for sewer lines, purification plants and equipment does not transform the water and change it back into groundwater or surface water. It remains effluent.

Neither the statutes dealing with groundwater nor those dealing with appropriation of surface water control or regulate the Cities' use or disposition of effluent. Thus, the Cities are free to contract for the disposition of that effluent and the utilities, having purchased the right to use the effluent, may continue to use it.

*Id.* at 438, 773 P.2d at 997.

Arizona Water points to the language in *Long* that "while effluent is neither groundwater nor surface water, it is certainly water." *Id.* That language is part of a paragraph inviting the legislature to regulate the use and disposition of effluent; it does not alter the court's conclusion that the cities in that case were free to contract for the disposition of the effluent.

Because effluent is not the same as the water that Arizona Water provides to its service area, we find no merit to Arizona Water's contention that the city is illegally competing with it.

■ Arizona Water also contends that the city's delivery of effluent constitutes a taking of Arizona Water's property without the payment of just compensation. We disagree. As the court found in *Long:*

We do not agree with the contention of the Cities and Utilities that the Cities own the sewage effluent. In Arizona, being a desert state, water is a precious commodity. One does not own water in Arizona. One only has the right to put it to beneficial use. This applies to both surface water, see A.R.S. § 45–151(A) and (B), and groundwater.

*Id.* at 436, 773 P.2d at 995.

Finally, Arizona Water contends that the trial court's ruling contravenes the established public policy in favor of granting regulated monopolies to public service corporations, citing A.R.S. §§ 9–515 and 9–516 and *Corporation Commission v. Peoples Freight Line,* 41 Ariz. 158, 16 P.2d 420 (1932). We have already concluded, however, that the city is not competing with Arizona Water.

The problem involved here is not a new one. As the Wyoming Supreme Court observed many years ago,

[i]t is well known that the disposition of sewage is one of the important problems that embarrass[es] municipalities. In order to dispose of it without injury to others, a city may often be confronted with the necessity of choosing between several different plans, and in the selection of the plan to be followed we think it should be permitted to exercise a wide discretion. In determining how it will make a proper disposition of that which may be termed a potential nuisance, we think the city should not be hampered by a rule that would always require the sewage to be treated as waste or surplus waters. Sewage is something which the city has on its hands, and which must be disposed of in such a way that it will not cause damage to others. It would often be considered the height of efficiency if it could be disposed of in some other manner than by discharging it into a stream. Even in this state, where the conservation of water for irrigation is so important, we would not care to hold that in disposing of sewage the city could not adopt some means that would completely consume it.

*Wyoming Hereford Ranch v. Hammond Packing Co.,* 33 Wyo. 14, 22, 236 P. 764, 772 (1925).

The effluent that the city is delivering to PD is not usable for drinking water, irrigation, or fire protection purposes. It is usable for nothing other than PD's leaching operation. It is not produced through Arizona Water's service facilities; it is produced through the city's sewage treatment facility, and PD supplies the pipeline and pumps to transport the effluent to its leaching operation.

Arizona Water insists that it stands ready, willing, and able to supply whatever water PD requires for its leaching operation. The water it could supply, however, would be water that could otherwise be used for drinking water, fire protection, and irrigation. "It is, and has ever been, the policy of this state to make the largest possible use of the comparatively limited quantity of water within its boundaries." *Pima Farms Co. v. Proctor,* 30 Ariz. 96, 102, 245 P. 369, 371 (1926). It would contradict the water conservation policies of this state to use such water for a leaching operation when the city's effluent, which is not otherwise usable, already serves that purpose admirably.

Therefore, we conclude that the trial court correctly granted the city's motion for summary judgment. Its request for attorney's fees on appeal is denied.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.